IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| : | CRIMINAL ACTION NO. |
| v. : | 1:04-CR-0547-JOF |
| : | |
| : | CIVIL ACTION NO. |
| MELINDA MILLER, : | 1:05-CV-2087-JOF |
| : | |
| Defendant. : | |

**OPINION AND ORDER**

This matter is before the court on Petitioner's *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [20-1].

**I.    Background**

    **A.    Procedural History**

Petitioner, Melinda Miller, pled guilty to two counts of mail fraud in violation of 18 U.S.C. §§ 1341 & 2.  On April 8, 2005, Petitioner was sentenced to 27 months' imprisonment, a total of $68,000 in restitution ($17,000 individually and $51,000 jointly and severally with other co-defendants), a $200 special assessment, and three years' supervised release.  Petitioner did not file a direct appeal.  Petitioner filed the instant motion on August 7, 2005.  Petitioner was represented by Cathy Alterman during the plea and sentencing.

AO 72A
(Rev.8/82)

### B. Plea Hearing

Petitioner was charged with being involved in a scheme whereby false invoices from nonexistent companies were submitted to Cingular Wireless Company. Petitioner was an employee of Cingular who learned of the scheme and joined it. During the plea hearing, the court went over the nature of the scheme with Petitioner. *See* Plea Transcript, at 5-7. Counts 14 and 15 of Petitioner's indictment related to two $17,000 checks Petitioner caused to be issued by Cingular Wireless to AMB Mobile and Remedy Solutions, two of the sham corporations created to receive checks for fraudulent invoices. *Id.* at 6. The court further informed Petitioner:

> [Y]ou don't actually have to have done every single thing to be guilty. If you knew of the scheme to defraud and understood its illegal purposes and if you associated yourself with it as though it was something that you wanted to have succeed, that is, you counseled or commanded it or you helped somebody do it or facilitated somebody doing any part of it, then you are guilty even though you didn't do every single thing.

*Id.* at 7.

The court informed Petitioner that the maximum punishment was twenty years in prison on each count and/or a $250,000 fine, so that Petitioner was facing a maximum of forty years in prison and/or a $500,000 fine. *Id.* The court also explained to Petitioner that it must impose $34,000 in restitution. *Id.* at 8. The court also stated, "I may require you to contribute to restitution in the full amount of the loss Cingular . . . incurred on account of the entire scheme." *Id.*

2

The court recognized that the prosecutor and Petitioner's counsel may have discussed a range of sentencing that she could receive under the Sentencing Guidelines but cautioned Petitioner, "you have no firm assurance that any sentence you get will fall within any particular range. It could be more than has been discussed with you, it could be less." *Id.* at 9. "If the sentence you get is different from the sentence you expected, you are stuck with it. You can't withdraw that plea." *Id.*

When the court asked Petitioner, "do you now give up the rights that I just explained to you and do you do that freely and voluntarily?" Petitioner responded, "Yes, sir, I do." *Id.* at 11. The court then went on to explain to Petitioner the issue of acceptance of responsibility. The court stated,

> [I]n the sentencing scheme we have, the way you lose acceptance of responsibility adjustment, which is a favorable adjustment, is by trying to sugarcoat what you did. Mr. Collins who is the pretrial services officer who is seated at the back table will interview you, and if you try to minimize what you did, deny what you did or you start giving conflicting stories as to what you did, then the government doesn't have to recommend substantial assistance, and I certainly wouldn't give you acceptance of responsibility.

*Id.* at 14.

Petitioner then explained to the court that she became involved in the scheme when she confronted an employee under her supervision about false invoices. *Id.* at 15. She asked him to resign voluntarily. *Id.* The invoices continued to arrive, however, and at that point, the employee offered Petitioner cash, which she accepted. *Id.* Petitioner confirmed again for the court that she wished to plead guilty and the court accepted her plea. *Id.* at 17.

3

**C.     Sentencing**

Petitioner was sentenced on April 8, 2005.  Petitioner's counsel objected to the loss amount, the role in the offense, and acceptance of responsibility.  *See* Sentencing Transcript, at 1.  The court informed counsel that it had two versions of what went on – Petitioner's on the one hand and her co-defendants' on the other.  *Id.*  The court, however, credited the statements of Petitioner's co-defendants because there were indicia of reliability and credibility associated with their statements.  *Id.*  The court also expressed some concern that Petitioner may have obstructed justice during her interview with the probation officer by minimizing her role in the scheme and attempting to shift blame to others.  *Id.* at 5-6.

Petitioner's counsel argued that Petitioner should not be held responsible for loss amounts prior to January 2003 and that she actually stopped two invoices and held payment on them so that those losses should also not be attributed to her.  *Id.* at 8.  Petitioner's counsel argued that Petitioner's loss amount should be $51,000.  *Id.*  The prosecution responded that the two checks actually had been issued by Cingular, so Petitioner had not stopped them.  *Id.* at 9.

The court overruled Petitioner's objections.  *Id.* at 11-12.  During mitigation, Petitioner's counsel argued that the Sentencing Guidelines were "discretionary" and that the court could take into account the circumstances of Petitioner's upbringing.  *Id.* at 15.  The court sentenced Petitioner to the low end of the guideline range, at 27 months' imprisonment and an order of restitution of $17,000 on one count of the mail fraud.  *Id.* at 17-18.  The court

AO 72A
(Rev.8/82)

also ordered an additional $51,000 in restitution, joint and several among the co-defendants, to be paid while Petitioner is on supervised release. *Id.* at 18.

### D. Habeas Petition

In her § 2255 motion, Petitioner contends (1) that her conviction was obtained by a violation of the privilege against self-incrimination because she was told that "the information she gave would not be held against" her, but the information she gave to the probation officer was used against her at sentencing; (2) her sentence is not commensurate to her plea agreement because she pled guilty to two counts of fraud based on $34,000 in checks but was sentenced to a loss amount of $84,000; (3) her sentence was enhanced by facts found by a judge and not a jury; and (4) she was denied effective assistance of counsel because her counsel told her that (a) she was guilty as to $34,000; (b) if she did not take the plea agreement, she could be sentenced to five years in prison, (c) no search and seizure was necessary, and (d) that the "new ruling on Judge found enhancements would help protect me (from such a long prison sentence)." Petitioner generally contends that her plea agreement was never explained to her.

## II. Discussion

### A. Knowing and Voluntary Nature of Guilty Plea

As noted above, Petitioner did not file a direct appeal to her conviction and sentence. "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255

5

proceeding." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). *See also Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990). When a defendant fails to raise an available claim for relief on direct appeal and thus faces a procedural bar, his claim will not be considered in a § 2255 proceeding unless he can show cause for the default and actual prejudice suffered as a result of the alleged error. *Mills*, 36 F.3d at 1055. Alternatively, a defendant may overcome a procedural bar if he can show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Here, Petitioner raises an ineffective assistance of counsel claim that may excuse her procedural default, and thus, the court proceeds to consider Petitioner's claims.

"A guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice." *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (internal quotations omitted). Because a guilty plea constitutes a waiver of certain constitutional rights, "it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and consequences." *United States v. French*, 719 F.2d 387, 390 (11th Cir. 1983); *see also Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (indicating that challenges to voluntary and intelligent entry of guilty plea allowed "only . . . if a convicted defendant can prove 'serious derelictions' in his counsel's advice regarding the

plea"); *Downs-Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985) ("To be entitled to collateral relief, the accused must prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.") (internal quotations omitted). Although not every misrepresentation made by an attorney that results in a guilty plea constitutes ineffective assistance, *see Downs-Morgan*, 765 F.2d at 1540-41, misrepresentations resulting in a guilty plea made without an awareness of the true consequences can render an attorney's advice constitutionally deficient. *See Betancourt v. Willis*, 814 F.2d 1546, 1548- 49 (11th Cir. 1987).

Petitioner appears to contend that her plea was not knowing and voluntary because she did not understand that she could be sentenced to 27 months' imprisonment and ordered to pay restitution beyond the $34,000 in conjunction with the two counts of the indictment to which she pled guilty. However, as the recitation of the plea colloquy above shows, the court went over with Petitioner the fact that she could be sentenced to forty years in prison. The court also specifically highlighted to Petitioner that it was required to impose $34,000 in restitution but could order additional restitution. *See* Sentencing Transcript, at 8 ("I may require you to contribute to restitution in the full amount of the loss Cingular . . . incurred on account of the entire scheme."). At every step in the process, Petitioner indicated to the court that she understood and desired to plead guilty.

Significantly, in her § 2255 motion, Petitioner never states that had she known the court would impose a $68,000 restitution and 27 months' imprisonment, she would not have

7

plead guilty. Furthermore, as is evident from the sentencing proceedings, the sentence Petitioner received was higher than she might have anticipated because the court refused to award acceptance of responsibility in light of Petitioner's lack of complete cooperation during the presentence interviews.

The court recognizes that the statements made by a defendant during a plea colloquy do not impose an insurmountable barrier to a subsequent challenge to a guilty plea. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Nevertheless, the Supreme Court has made clear that "[s]olemn declarations in open court carry a strong presumption of verity." *Id*. The court finds that Petitioner was adequately informed that her sentence could be longer than that indicated to her by her attorney or the Assistant United States Attorney and that she could not withdraw her plea simply because the court imposed a higher sentence than Petitioner thought she would receive. Having reviewed the record and considered the aforementioned policy concerns, the court finds that Petitioner's counsel did not render ineffective assistance of counsel and that Petitioner voluntarily and intelligently entered a plea of guilty. *See Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988) (finding that defendant knew there was possibility he might receive sentence imposed, and his expectation and assumption to the contrary did not provide grounds for setting guilty plea aside).

### B.     Remaining Issues

Petitioner contends that her rights against self-incrimination were violated because the information she presented to the pretrial services officer was used against her at sentencing.

8

The court, however, explained to Petitioner during the plea colloquy that she would have to be interviewed by the probation officer and she would need to be truthful with him about her participation in the scheme. The court explained to Petitioner that it would be in her best interest to be forthcoming because the acceptance of responsibility adjustment could provide a significant adjustment in her sentence. Also, the contents of her statement to the probation officer was not used against her; it was the fact that the statement was untrue that caused her to lose acceptance of responsibility. Therefore, the court finds that Petitioner's "self-incrimination" argument is without merit.

Petitioner also alleges that her sentence was enhanced by facts found by a judge and not a jury. The court construes this as a *Booker* argument. In her written Plea Agreement, however, Petitioner specifically waived any right to appeal "*Booker*" issues. The Agreement states that Petitioner agrees to "waive any constitutional challenge to the Federal Sentencing Guidelines, and agrees that the court at sentencing may make findings under the Federal Sentencing Guidelines, including but not limited to enhancements, adjustments, and departures, by a preponderance of the evidence." Agreement, ¶ 6.

> In other words, the parties agree that sentencing hereunder shall be governed by the Federal Sentencing Guidelines and pertinent caselaw without regard to any issues raised by the decision in *Blakely v. Washington*, . . . and its progeny, and further agrees to waive any right to appeal based on the constitutionality of the Federal Sentencing Guidelines and/or *Blakely*.

*Id.* Because Petitioner waived any *Booker* challenges to her sentencing, she cannot raise them in her § 2255 motion.

For the foregoing reasons, the court DENIES Petitioner's *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

### III.     Conclusion

The court DENIES Petitioner's *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [20-1].

**IT IS SO ORDERED** this 24th day of March 2006.

                                                          s/ J. Owen Forrester
                                                          J. OWEN FORRESTER
                                                SENIOR UNITED STATES DISTRICT JUDGE